UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MARYLAND (Northern)

| | |
|---|---|
| **VICKY IRONMONGER** <br> 1505 Baby Baer Court <br> Glen Burnie, Maryland 21061 | * <br> <br> * |
| v. | * Civil Action No. 21-CV-773 |
| **NORTHROP GRUMMAN CORPORATION** <br> 2980 Fairview Park Drive <br> Falls Church, VA 22042 | * <br> <br> * |
| **Serve:** THE CORPORATION TRUST, INCORPORATED <br> 2405 York Road, Suite 201 <br> Lutherville Timonium, MD 21093 | * <br> <br> * <br> <br> * |
| **Defendant** | * |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**COMPLAINT AND ELECTION FOR JURY TRIAL**

Now comes, Plaintiff Vicky Ironmonger ("Ms. Ironmonger"), by and through counsel, and sues the Defendant Northrup Grumman Corporation ("NGC"), and in support thereof states as follows:

**PARTIES**

1. The Plaintiff, Vicky Ironmonger, is an adult citizen of Maryland, and the United States, residing at 1505 Baby Baer Court, Glen Burnie, Maryland 21061. Plaintiff is a person entitled to protection pursuant to the provisions of 29 U.S.C. § 2611(2)(a) to be treated as an employee within the meaning of the FMLA.

2. The Defendant, Northrop Grumman Corporation ("NGC"), is a foreign corporation organized and existing under the law of the State of Delaware, with its principal place of business and corporate headquarters at 2980 Fairview Park Drive, Falls Church, VA

22042. At all times relevant hereto, Northrop Grumman Corporation maintained offices, did business, and employed workers in the state of Maryland at multiple locations in Maryland, including Northrop Grumman, 7323 Aviation Blvd, Baltimore, Maryland. Furthermore, Defendant was the "employer" of plaintiff within the meaning of 29 U.S.C. § 1622(4)(a).

## JURISDICTION

3.   Jurisdiction is based on subject matter jurisdiction pursuant to 28 U.S.C. § 1331 as Plaintiff's claims involve claims under the Family and Medical Leave Act, 29 U.S.C. § 2601, *et seq.* ("FMLA").

4.   The unlawful employment practices described herein were committed within the State of Maryland, in Defendant's office in Timonium, Maryland, where Defendant regularly transacts business and performs work. Accordingly, venue is proper in this Court pursuant to 28 U.S.C. § 1391(b).

## FACTS COMMON TO ALL COUNTS

5.   The Plaintiff incorporates, repeats, realleges, adopts and incorporates by reference, paragraphs 1 through 4 above as though fully set forth herein.

6.   Plaintiff Vicky Ironmonger was employed by NGC from August 17, 1981 until she was conditionally terminated on or about March 27, 2019 and terminated again on April 2, 2019.

7.   Plaintiff Vicky Ironmonger's job title at NGC was "Controlled Information Specialist."  She was responsible for destruction of documents and other information, handled documentation and storage of high-level security files and data.

8. Throughout her employment with NGC, Ms. Ironmonger performed the requirements of her position fully and properly, receiving numerous raises and elevated security clearance.

9. Ms. Ironmonger's position required that she lift, bend, move boxes of documents and materials, and standing.

10. At all times relevant hereto, Defendant NGC maintained insurance through its third party administrator, Zurich. Zurich Life and Absence Management Solutions managed short-term disability benefits on behalf of Northrop Grumman Corporation.

11. At all times relevant hereto, Zurich was the real and/or apparent agent of NGC acting within the scope of its agency as the manager of Short-Term Disability and FMLA claims.

12. Beginning on or about January 9, 2019, Ms. Ironmonger went out on leave for medical conditions, including laryngitis, serious rash/allergic reaction and sores all over her body. Ms. Ironmonger, applied for, qualified for, and was ultimately granted FMLA leave associated with this medical condition.

13. NGC is a covered FMLA employer.

14. Ms. Ironmonger was an eligible employee and Ms. Ironmonger suffered from a serious health condition.

15. According to correspondence from Zurich which was not sent until February 21, 2019, Ms. Ironmonger met the eligibility requirements to take FMLA leave. In addition, she met the eligibility requirements to take a Medical Leave of Absence. Further, she successfully obtained short term disability for her medical leave from January 17, 2019 through March 31, 2019.

16. Ms. Ironmonger had a medical authorization detailing the diagnosis, documenting the physicians recommendation that she take leave from work due to this health condition, and initially permitting her to return to work on April 6, 2019.  The primary disabling diagnosis included severe eczema, supraventricular tachycardia (SVT), COPD, fatigue and pruritis.  The secondary diagnosis was intense pruritis with decreased sleep. Ms. Ironmonger suffered open lesions and rash associated with this intense pruritis on her face, trunk, arms and legs.  The physician prescribed multiple treatments, including steroids. Ms. Ironmonger pled with the physician to let her return sooner than April 6, 2019, and the physician authorized her to return to work on April 1, 2019 but not before.

17. On or about March 27, 2019, Ms. Ironmonger was terminated, while on FMLA leave and also on an NGC leave of absence.

18. Zurich, the NGC insurance provider and third-party administrator, incorrectly told Ms. Ironmonger to return to work on March 25, 2019, asserting that Ms. Ironmonger failed to provide medical documentation.

19. In addition, Amanda Welsh informed Ms. Ironmonger that she needed to return to work on March 25, 2019.

20. Ms. Ironmonger informed NGC that she could not medically return to work, that she required further treatment and that her health care provider, Dr. Izzi had instructed that she not return to work until April 1.

21. When she received the instruction from Zurich, Ms. Ironmonger informed NGC that she could not medically return to work on March 25, 2019.

22. At the time of Zurich's instruction, Ms. Ironmonger was on FMLA leave that was ultimately approved through April 1, 2019.

23. In addition to FMLA leave, Ms. Ironmonger was also covered by an NGC leave of absence which was to end on April 6, 2019.

24. On or about March 25, 2019, Ms. Ironmonger was experiencing an emergency medical condition related to a blood thinner, Coumadin, that had caused her blood to be hypocoagulable (too thin), and also a systemic allergy requiring steroid treatment to get it under control.

25. Ms. Ironmonger was treated by Dr. Izzi, who refused to give Ms. Ironmonger permission to return to work on March 25, 2019. Instead, she indicated that Ms. Ironmonger may be able to return to work on April 1, 2019.

26. Dr. Izzi provided a medical authorization to Ms. Ironmonger for return to work on April 1, 2019.

27. On or about March 27, 2019, NGC terminated Ms. Ironmonger for failing to return to work on March 25, despite the fact that she was approved for FMLA leave through April 1, 2019, she was on NGC LOA through April 6, 2019 and she had a medical authorization that did not permit her to return to work until at least April 1, 2019.

28. NGC demand that Ms. Ironmonger return to work on March 25, 2019 was in direct violation of her doctor's order and her rights under the FMLA.

29. Nonetheless, Ms. Ironmonger attempted to comply with the substance of NGC's unlawful demand.

30. Ms. Ironmonger left a voicemail on March 25 for NGC stated that she had not been released to return until April 1, 2019.

31. Ms. Ironmonger spoke to an NGC employee, Ms. Welsh, and explained the situation. Ms. Welsh instructed her to return to work on March 26, 2019.

32. Ms. Ironmonger voiced her objection, stating that she was still sick and had not been released by her doctor to return to work.

33. Nevertheless, NGC wrongfully told her to return or be considered a "voluntary quit."

34. Afraid of losing her job, Ms. Ironmonger attempted to return to work on March 26, 2019 as instructed by NGC.

35. On March 26, 2019, Ms. Ironmonger met Ms. Candace McKenzie, NGC's medical administrator.

36. Because Ms. Ironmonger did not have a return-to-work slip permitting her to work on March 26, 2019, and despite the fact that NGC demanded she return to work or be a "voluntary quit", NGC refused to let her in to work on March 26, 2019.

37. Ms. Ironmonger informed Ms. Welsh of NGC that she had reported to work but was being denied ability to work by NGC because she did not have medical authorization to return to work before April 1, 2019 as she had previously indicated.

38. This conversation is confirmed in a contemporaneous March 26 Salesforce note: "[s]he advised that she called this morning, however, she did not have a doctor's slip, however (sic) that they did not let her RTW because she did not have a doctor's note."

39. On March 27, 2019, Ms. Ironmonger left a voice message for the HR representative, Ms. Welsh, which stated:

> "Hello Amanda, thi sis Vicky Ironmonger. I attempted to come to work yesterday, March 26. I went in thru medical. They will not release me to return to work because my doctor's note has on there that I can't return until April 1st. I went over and saw my doctor, he said no, he wants more time on these steroids before he releases me. I called Zurich and talked with Deidre specifically, and she said that they have all the doctor's information. She turned it over to Zurich's nurse, they are reviewing it and they should have an answer by probably late today. So that is being straightened out. The appeal has been put in, they are

re-reviewing it, and I will be returning on April the 1st. If you need to call me, I'm on 443-***-****. Thank you."

40. On March 27, 2019, Ms. Ironmonger left a voice message for her manager, Joe Krainer, at 7:26 a.m., indicating that she had a medical authorization to return to work on April 1, 2019, and that she would return on April 1, 2019. The substance of the voicemail message was as follows:

"Hi Joe, it's Vic. Just touching base to let you know what's going on. I left a message for Amanda Welsh. I was told I had to be back to work on the 25th. I attempted to come in on the 26th. Medical would not let me come in because my doctor's slip has me returning on April 1st. And Zurich has all the paperwork they are reviewing it so it can become approved, hopefully, and they will then let HR know that everything is in place. I won't know probably until late this afternoon or tomorrow what the status is and if they are going to let me appeal it or not. So if you need to call me on 443-***-****. But as it stands right now I should be back April 1st, Bye.

41. Ms. Ironmonger also called NGC medical to make sure that her RTW form from Dr. Izzi was completed to NGC's satisfaction.

42. Unbeknownst to Ms. Ironmonger, on March 27, 2019, NGC sent her a letter indicating that she was terminated for failing to appear two days earlier, even though, if she had appeared for work on that earlier day, March 25, NGC would not have allowed her to work just like they wouldn't let her work on March 26.

43. In the March 27, 2019 termination notice, NGC made the following offer: "You failed to return to work as instructed and have not been approved for medical leave, hence your employment is terminated effective March 27, 2019…*If you subsequently get approval from Zurich* to cover your alleged medical absence from work beginning January 9, 2019, we will consider reinstating your employment." [emphasis added].

44. On or about March 29, 2019, prior to receiving the termination notice dated March 27, 2019, Ms. Ironmonger called the medical administrator, Candace McKenzie, at NGC to discuss the return to work slip which authorized Ms. Ironmonger return to work on April 1, 2019. Ms. McKenzie told Ms. Ironmonger that she could not discuss it and that she needed to call Human Resources.

45. Later on March 29, 2019, Ms. Ironmonger received the termination letter dated March 27, 2019.

46. At the time of the termination, NGC's insurance company Zurich, had all of the records needed for the approval of Ms. Ironmonger's FMLA leave, including all medical documentation.

47. Ms. Ironmonger was told that the only thing needed for this approval was for Zurich to read the documents that had been previously submitted.

48. Having met all of the preconditions for reinstatement, and based on NGC's March 27 offer and promise, Ms. Ironmonger then requested reconsideration, reinstatement and asked to be cleared to return to work on April 1, 2019, in compliance with her physician's note.

49. Ms. Ironmonger returned to the union hall at 8:00 a.m. on April 1 to confirm that she was ready to return to work. She met with the Union President of SEA, Denny Wilderson, and her union representative, Vicky Johnson, showing them all of her documentation. Mr. Wilderson called Amanda Welsh on the telephone and was told that Ms. Ironmonger could not return to work because of lack of documentation. Ms. Ironmonger and Denny Wilderson accessed the Zurich portal together to determine the status or processing the documentation that had been provided.  While on the Zurich portal, it showed that the leave of absence was approved until April 2, 2019. Mr. Wilderson informed Amanda Welsh of the approval and that

she was protected under FMLA up to April 2, 2019. Amanda Welsh told him "she didn't want to hear that."

50. NGC had actual knowledge of Ms. Ironmonger's medical authorization to return to work on April 1, 2019.

51. Nonetheless, NGC refused to reinstate Ms. Ironmonger, and contended that it needed approval from Zurich.

52. Rather than NGC talking with its agent, Zurich, to process reinstatement, NGC wrongfully turned Ms. Ironmonger away and rejected her effort to return to work on April 1, 2019 and then held the fact that she didn't work against her.

53. Processing of the paperwork at Zurich had not yet occurred despite all paperwork being submitted at the time of Ms. Ironmonger's termination. Eventually, Zurich did acknowledge that all paperwork had been submitted, processed the paperwork, found that she had met the requirements for FMLA leave through April 1, 2019, and that Ms. Ironmonger could return to work on April 1, 2019.

54. Nevertheless, NGC refused reinstatement claiming an alleged failure to report to work on April 1, 2019.

55. NGC terminated Ms. Ironmonger (again) allegedly for failing to return to work on April 1, 2019, and failing to provide notice of intent not to return. These justifications are in direct contradiction to the many attempts to return to work and the prior notice of her termination on March 27, 2019.

56. Despite the termination notices, Ms. Ironmonger was on FMLA leave, was on an NGC leave of absence, and the only impediment to her return was that NGC and/or its insurer, had failed to properly update their records and notify the correct personnel.

57. Ms. Ironmonger requested reinstatement.

58. A failure to reinstate, particularly in light of the failure of NGC to gain the full facts, to communicate with Zurich and in light of Ms. Ironmonger's attempts to comply by reporting to work, is a "discrete retaliatory act."

59. On April 10, 2019, Ms. Ironmonger confirmed again with Lorraine at Zurich that her FMLA and LOA appeal had been granted and Ms. Ironmonger was on approved leave through April 2 and also on NGC LOA through April 6, 2019.

60. Nonetheless, NGC failed and/or refused to rescind its' termination of Ms. Ironmonger or notify her that she could be reinstated.

## Count I
## FMLA Interference and Retaliation

Plaintiff incorporates paragraphs 1 through 60 as through repeated herein in full.

61. At all times pertinent hereto, Ms. Ironmonger was employed by NGC.

62. Ms. Ironmonger engaged in conduct protected under the FMLA.

63. NGC was aware that Ms. Ironmonger engaged in conduct protected under the FMLA.

64. NGC took an employment action adverse to Ms. Ironmonger by demanding that she return to work on March 25, 2019 despite knowledge that she had a medical release that only permitted return on April 1, 2019.

65. NGC took an employment action adverse to Ms. Ironmonger by failing to communicate with its agent and administrator, Zurich. Had they communicated with Zurich, NGC would have known that Ms. Ironmonger had provided all required documentation.

66. NGC took an employment action adverse to Ms. Ironmonger by conditionally terminating Ms. Ironmonger on March 27, 2019 while she was still on leave.

67. NGC took an employment action adverse to Ms. Ironmonger by failing to reinstate Ms. Ironmonger when they were informed she had been appropriately on leave until at least April 1, 2019.

68. NGC took an employment action adverse to Ms. Ironmonger by failing to permit her to return to work on April 1, 2019 when she appeared for work.

69. NGC took all of the above actions knowing that Ms. Ironmonger had communicated that the paperwork had been submitted to Zurich, and that she had a return to work slip from a doctor for her to return April 1, 2019.

70. NGC took all of the above actions willfully and without taking reasonable steps to obtain information from their agent and/or administrator, Zurich and/or assist in processing the paperwork.

71. NGC wrongfully terminated Ms. Ironmonger.

72. NGC took action that interfered with Ms. Ironmonger's right to FMLA leave, and retaliated against her for exercising that right.

73. Interference by an employer with an employee's exercise of FMLA rights, or retaliation for the exercise of those rights, is prohibited under 19 U.S.C. §2615(a):

   a. "it shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter."; and,

   b. "It shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter."

74. An employer who violates the FMLA shall be liable for damages equal to any wages, salary, employment benefits, or other compensation denied or lost to such employee by

reason of the violation, prejudgment interest, an additional amount as liquidated damages equal to the sum of the foregoing, equitable relief as may be appropriate, including employment, reinstatement, and promotion, and reasonable attorney's fees.

**75.**  Under §2614(a)(1) and (c)(1) of the FMLA, Ms. Ironmonger had a right to reinstatement.

**76.**  There is a causal connection between the protected activity and the adverse employment action that has resulted in damages, including loss of pay, loss of benefits, and loss of employment.

WHEREFORE, Plaintiff Vicky Ironmonger, prays this Honorable Court, award judgment against Defendant NGC as follows:

A. For a money judgment representing compensatory damages in an amount exceeding $75,000, including lost wages, past and future wages, all other sums of money, including any and all benefits and any other employment benefits together with interest on said amounts, in addition to tort damages;

B. For $1,000,000 money judgment representing punitive damages for defendant's willful violations of law;

C. For money judgment representing prejudgment interest, if applicable;

D. Reinstatement and restoration of benefits;

E. That this Court retain jurisdiction over this action until defendant has fully complied with the orders of this Court;

F. For lost monies and damages pertaining to out-of-pocket expenses plus interest;

G. For costs of suit, including an award of reasonable attorney's fees, expert fees; and,

H. For such other and further relief as may be just and proper.

**Prayer for Jury Trial**

Plaintiff, Vicky Ironmonger, respectfully requests a trial by jury on all claims.

Respectfully Submitted,

_____/s/_____
Ellen B. Flynn, Esquire (Bar No. 13800)
Ellen.Flynn@smitheylaw.com
Smithey Law Group, LLC
706 Giddings Avenue, Suite 200
Annapolis, Maryland 21401
410-919-2990
443-875-7303 (cell)

Attorneys for Plaintiff, Vicky Ironmonger